COMMONWEALTH *vs.* KEVIN MICHAEL MANNING.

Middlesex.    November 8, 1976. — January 19, 1977.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Constitutional Law,* Assistance of counsel, Conduct of government
agents.  *Evidence,* Testimony by Federal agent.  *Practice, Crimi-
nal,* Indictment while complaint pending.

At a criminal trial, there was no error in excluding the testimony of a
special agent of the United States Drug Enforcement Administra-
tion which had been acquired as part of the agent's official duties
as an employee of the Department of Justice where the United
States Attorney General had not granted the agent permission to
testify. [28-29] BROWN, J., concurring.
The fact that certain agents of the United States Drug Enforcement
Administration made disparaging remarks concerning the defend-
ant's counsel in an attempt to induce the defendant to become an
informer did not require dismissal of the indictments against the
defendant where there was not a serious impairment of the defend-
ant's relation with his counsel as a result of the agents' misconduct
[29-31]; however, the defendant was to be afforded an opportunity
to move for a new trial at which he would be represented by new
counsel of his choice [31-32]. BROWN, J., concurring.

INDICTMENT found and returned in the Superior Court
on October 10, 1974.

A motion to dismiss was heard by *Moynihan,* J., and
the case was tried before *Morse,* J.

*Thomas G. Shapiro* (*Ann Lambert Greenblatt* with
him) for the defendant.

*James W. Sahakian,* Special Assistant District Attor-
ney, for the Commonwealth.

*John Reinstein & Jeanne Baker* for The Civil Liberties
Union of Massachusetts, amicus curiae, submitted a brief.

HALE, C.J.    After a preliminary proceeding before one
Superior Court judge and a trial before another, the de-

fendant was convicted on both counts of a two-count indictment for distributing a Class B controlled substance (cocaine) in violation of G. L. c. 94C, § 32. He has appealed under G. L. c. 278, §§ 33A-33G. He assigns as error (1) the denial of his motion to dismiss the indictment and (2) the exclusion of certain evidence at the hearing on the motion to dismiss. There was no error.

The pertinent facts found by the motion judge or appearing from the record are as follows.[1] On August 8, 1974, the defendant was arrested at his home by State and Federal law enforcement officials. He was charged with selling cocaine to a Massachusetts State police officer and to one Marchand, a special agent of the United States Drug Enforcement Administration (DEA). On August 9, 1974, the defendant was arraigned in a District Court, where he entered pleas of not guilty to two complaints charging him with unlawful distribution of cocaine on March 4 and August 8, 1974, respectively. The cases were continued to August 21, on which date the defendant appeared with counsel and filed several motions. The judge continued the cases to August 29 for a hearing on the motions and set September 5 for trial or for a probable cause hearing.

On August 22, 1974, Marchand telephoned the defendant at his place of employment. The call was made "without the knowledge or permission" of the defendant's counsel. Marchand's purpose in calling the defendant was "to induce the defendant to become an informer and to cooperate with the Federal agents in their ongoing investigation of traffic in narcotics." The precise details of the conversation are not clear. However, during the course of the conversation Marchand made several disparaging remarks about the defendant's counsel and the manner in which he was conducting the defense and requested the defendant to cooperate with the DEA. Furthermore, Marchand "indicated that the tactics of defense counsel would not insure the defendant being kept out of jail." Immedi-

---

[1] The quotations are from the findings of fact and rulings by the motion judge on the motion to dismiss.

ately thereafter the defendant notified his counsel of this conversation.

On August 23 the defendant, in the presence of his counsel, telephoned Marchand's office. Marchand was not in, and the defendant spoke with another special agent identified only as "George." This second DEA agent "in substance adopted the same line of conversation as agent Marchand had the previous day, speaking disparagingly of the tactics being pursued by counsel for the defendant and urged the defendant to cooperate with the Federal agents."

On August 29, 1974, a hearing on the motions was held in the District Court, and the date for the hearing on the merits was changed from September 5 to October 10. Also on August 29 defense counsel informed the assistant district attorney of Marchand's conversation with the defendant. On October 7 the defendant filed a motion in the District Court to dismiss the complaints on the ground of gross prosecutorial misconduct, alleging that the defendant's rights to counsel, to a fair trial, and to due process had been denied. Some time prior to October 10, 1974, Marchand requested grand jury time in order to obtain a direct indictment against the defendant. The indictment was returned on October 10, 1974. On the same day the defendant and his counsel appeared in the District Court for a probable cause hearing. The case was continued to November 21, 1974, because a prosecution witness was unable to be present.

On October 31, 1974, the defendant filed a motion in the Superior Court to dismiss the indictment, alleging as grounds the same misconduct set out in the motion to dismiss which had been filed in the District Court, but with an additional ground: that the seeking and obtaining of a direct indictment in the case "was an abuse of prosecutorial discretion."

After a hearing the motion was denied. In denying the motion the judge specifically found that: (1) there was "not a *serious* impairment of the relation of counsel and client as a result of the misconduct of the two agents" (emphasis supplied); (2) counsel for the defendant was

able to proceed adequately and completely with the defense of the case; (3) the defendant had "confidence"[2] in his counsel; and (4) the ability of counsel to represent the defendant had not been adversely affected by reason of governmental misconduct. The judge concluded that the net effect of the governmental misconduct was harmless with respect to the defendant's right to effective assistance of counsel and to a fair trial. The judge also ruled that "the defendant's statutory and constitutional rights were not violated by reason of the return of the present indictment against him."

On January 23, 1975, after a jury waived trial, the trial judge found the defendant guilty on both counts of the indictment and sentenced him on the first count to one year in a house of correction, suspended the sentence and placed the defendant on probation for two years. He sentenced the defendant to ten days in a house of correction on the second count.

1. We first consider the defendant's assignment of error which is based on the exclusion of certain evidence at the hearing on the motion to dismiss the indictment. On direct examination the defendant sought to ask Marchand about his conversations with the defendant. A representative from the United States Attorney's office was permitted to address the court and informed it that Marchand was prohibited, without the permission of the Attorney General of the United States, from testifying to matters relative to the case which he (Marchand) had learned during the course of his investigation. Although a request had been made to the Attorney General to permit Marchand to testify, the Attorney General had not yet advised the United States Attorney's office whether permission would be given. The defendant made no request for a continuance until such time as the Attorney General's position might be determined. In the circumstances, the judge was

---

[2] When considered in the light of the finding numbered (1) and the evidence at the hearing, we regard "confidence" as used by the motion judge to mean something less than full confidence.

entirely correct in excluding testimony which had been acquired as part of Marchand's official duties as an employee of the Department of Justice. 28 C.F.R. § 16.21-§ 16.26 (1976).[3] See *United States ex rel. Touhy* v. *Ragen,* 340 U. S. 462 (1951).

2. We now consider whether the conduct of the two DEA agents requires dismissal of the indictment. At the outset we acknowledge that the office of the district attorney took no part in and had no knowledge of the activities of the DEA agents until after such acts had taken place. However, because Marchand was an arresting officer and a key prosecution witness, we consider him to have been part of the prosecution team.

The defendant alleges that the motion judge erred in denying the motion to dismiss the indictment. There are two bases for that contention; first, that the direct communication of the DEA agents with the defendant after counsel had been obtained was prejudicial, and second, that the seeking and obtaining of a direct indictment was prejudicial.

We do not in any way condone the conduct of the two DEA special agents. We concur in the following opinions expressed by the motion judge: "It is manifest that the conduct of Agent Marchand and his fellow agent, George, deserve strong condemnation. It is clear that that conduct amounted to unwarranted interference with the relationship between the defendant and his attorney. There is no justification for the government['s] attempt to deal with the defendant behind the back of his counsel." However, we do not feel, in the circumstances, that such a blunder by the DEA agents should result in the complete eradication of convictions that resulted from evidence obtained

---

[3] This regulation sets out the procedures to be followed when a subpoena, order or other demand of a court or other authority is issued for the production or disclosure of, among other things, any information or material that was acquired by any person while such person was an employee of the Department of Justice as part of the performance of his official duties or because of his official status. Production or disclosure is prohibited unless approved by the Attorney General or by the appropriate department official.

under conditions totally divorced from the prosecutorial misconduct.

The defendant argues that such prosecutorial misconduct mandates dismissal of the indictment by application of a per se rule without the necessity for any showing of prejudice. Cited are *Glasser* v. *United States*, 315 U. S. 60, 75-76 (1942), *Massiah* v. *United States*, 377 U. S. 201 (1964), *Black* v. *United States*, 385 U. S. 26 (1966), *O'Brien* v. *United States*, 386 U. S. 345 (1967), and *Geders* v. *United States*, 425 U. S. 80 (1976). The holdings in those cases fall far short of furnishing support for the defendant's contention that the indictment should be dismissed. In all of those cases the convictions were reversed, but in none was an indictment dismissed.[4]

The defendant points to only one case, *People* v. *Moore*, 57 Cal. App. 3d 437 (1976), in which the indictment was dismissed because of an intrusion by the prosecution into the attorney-client relationship. However, we regard the misconduct of the government in that case as so outrageous and the prejudice caused to the defendant as so great when contrasted with the instant case that we are not inclined to follow the holding of that case.

It is necessary to balance the need to deter government misconduct, which impairs a defendant's right to the effective assistance of counsel, against the societal impact of dismissing an indictment because of such conduct. See *United States* v. *Calandra*, 414 U. S. 338 (1974); *United States* v. *Janis*, 428 U. S. 433, 443-447 (1976). Society has a direct interest in diminishing the availability of cocaine and other controlled substances. Bringing to justice those who distribute such commodities is an effective way of

---

[4] Courts in other jurisdictions have also found that intrusions into the attorney-client relationship do not require dismissal of the indictment. *South Dakota* v. *Long,* 465 F. 2d 65, 72 (8th Cir. 1972), cert. den. sub nom. *Hale* v. *South Dakota,* 409 U. S. 1130 (1973) (eavesdropping on attorney-client conversation). *United States* v. *Cooper,* 397 F. Supp. 277 (D. Neb. 1975) (informants in defense camp). *United States* v. *Crow Dog,* 532 F. 2d 1182 (8th Cir. 1976) (informants in defense camp).

advancing that interest. However, it is also true that society benefits from ardent protection of the constitutional rights of the citizenry against the possible erosion that can be brought about by unlawful conduct on the part of the prosecution. In the present case we decline the invitation to overreact by dismissing the indictment, as we consider that there is another and less drastic method of protecting the rights of the defendant while at the same time preserving the interests of society. We discuss that method in part 3 of our opinion.

The defendant also contends that it was error not to have dismissed the indictment because, in the circumstances of this case, it was prejudicial for the prosecuting attorney to seek a direct indictment against him. We find nothing in the record to support that contention. We agree with the judge below that "the defendant's statutory and constitutional rights were not violated by reason of the return of the present indictment against him." See *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525 (1974).

3. Although we have decided that the misconduct of the DEA agents does not require dismissal of the indictment, and even though the defendant has not asked for any alternative remedy (perhaps for good reason), we feel that egregious conduct such as that of the DEA agents in the present case should be proscribed, and a remedy afforded which will deter its repetition. A proper means of accomplishing this, if requested by the defendant, would be to reverse the conviction to permit a new trial. That such a remedy is firmly established is shown in cases cited by the defendant. In *Glasser* v. *United States,* 315 U. S. 60 (1942), a conspiracy case, the court reversed Glasser's conviction and ordered a new trial because the trial judge had directed Glasser's attorney to represent a codefendant. The court held that the defendant had been denied his right to the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. The court noted that the attorney's conflicting interests resulted in a representation which was not as effective

as it might have been if there had been no such conflict. More importantly, having determined that the defendant received something less than effective assistance of counsel, the court went on to state, at page 76, that "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the *amount* of prejudice arising from its denial" (emphasis supplied). In *Geders* v. *United States*, 425 U. S. at 91 it was held that "an order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." At no point in the opinion did the court indicate the extent to which it thought the defendant's right to assistance of counsel had been affected. It was sufficient that the defendant had shown that his Sixth Amendment rights had been impinged upon.

In the present case the motion judge found that there had been no "serious" impairment of the attorney-client relationship. Implicit in that finding is a finding that the defendant had been prejudiced to some extent by the conduct of the DEA agents.[5] Following the rationale of *Glasser* and *Geders*, we will not attempt, nor do we feel obliged, to determine the actual effect of the prosecutorial misconduct on the defendant's rights to the effective assistance of counsel and a fair trial.

For the foregoing reasons we believe that the defendant should be afforded an opportunity to move for a new trial at which he would be represented by new counsel of his choice. Accordingly, if the defendant does so move within forty days of the issuance of our rescript, his motion is to be allowed. If requested by the defendant, the fees and expenses of new counsel are to be paid by the county in such reasonable amounts as may be approved by the court, without regard to any question of indigency. The judg-

---

[5] See footnote 2, *supra.*

ments are to stand, subject to the allowance of any motion for a new trial which may be filed in accordance with this opinion.

*So ordered.*

Brown, J. (concurring). I believe we should consider the implementation of a prophylactic rule in which the indictment against the defendant is dismissed where there was deliberate misconduct on the part of the law enforcement officers or prosecutors which interfered with the defendant's right to the effective assistance of counsel. Such a rule would likely have a stronger inhibiting effect on future police and prosecutorial conduct of this kind. See generally Wald & others, Interrogations in New Haven: The Impact of *Miranda,* 76 Yale L.J. 1519, 1550-1554 (1967). I concur, however, with the majority's conclusion that this is not an appropriate case for us to dismiss the indictment against the defendant.[1] Nevertheless, it must be understood that I strongly condemn the actions of the agents of the DEA in their attempt to undermine the defendant's confidence in his counsel.

It should be emphasized that defendants in such situations are not without remedies. As mentioned in the majority opinion, the defendant can receive a new trial if he requests one now (see G. L. c. 278, § 29), notwithstanding that the degree to which the defendant's Sixth Amendment right to counsel has been impaired is speculative. I take this opportunity to reiterate the majority's citation of *Glasser* v. *United States,* 315 U. S. 60, 76 (1942), to the effect that "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." The defendant may also have available to him a civil action against the DEA agents alleging in-

---

[1] The fact that the officers guilty of misconduct were agents acting entirely independently of State law enforcement officials in approaching the defendant cuts against implementation of a prophylactic rule in the instant case.

terference with the attorney-client relationship.[2] *Berlin Democratic Club* v. *Rumsfeld,* 410 F. Supp. 144, 161-162 (D.D.C. 1976). See *Wounded Knee Legal Defense/ Offense Comm.* v. *Federal Bureau of Investigation,* 507 F. 2d 1281, 1284 (8th Cir. 1974). Compare *Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U. S. 388 (1971); *Bethea* v. *Reid,* 445 F. 2d 1163 (3d Cir. 1971), cert. den. 404 U. S. 1061 (1972); *United States ex rel. Moore* v. *Koelzer,* 457 F. 2d 892, 894 (3d Cir. 1972). See generally, Engdahl, Immunity and Accountability for Positive Governmental Wrongs, 44 U. Colo. L. Rev. 1 (1972).

And finally, I am troubled with the motion judge's handling of the defendant's claim that certain evidence at the hearing on the motion to dismiss the indictment was improperly excluded. It seems to me that when a mere Federal regulation clashes with the Fifth and Sixth Amendments to the United States Constitution, cf. *Pointer* v. *Texas,* 380 U. S. 400, 405 (1965); *Washington* v. *Texas,* 388 U. S. 14, 23 (1967), the regulation *must* fall. See *United States ex rel. Touhy* v. *Ragen,* 340 U. S. 462, 467-468 (1951).

--------

[2] In its brief the Commonwealth also suggests this as an alternative available to aggrieved defendants.