COMMONWEALTH vs. KEVIN MICHAEL MANNING.

Middlesex.    April 5, 1977. — September 26, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS,
LIACOS, & ABRAMS, JJ.

Constitutional Law, Assistance of counsel, Conduct of government
agents. Practice, Criminal, Dismissal.

Wilful interference by two Federal law enforcement officers, who
worked closely with a State prosecutor, with the constitutional rights
to counsel and to a fair trial of a defendant charged in a complaint
and in a subsequent indictment with distributing controlled sub-
stances in violation of G. L. c. 94C, § 32, manifested by one of the
officers' telephone call to the defendant with the purpose of inducing
him to become an informer, and speaking disparagingly of defense
counsel's tactics, and by a telephone conversation between the other
officer and the defendant in the presence of his counsel in which
the officer adopted "the same line of conversation" as the first officer,
prejudiced the defendant [442-443]; the officers' misconduct demands
dismissal of the indictment with prejudice rather than an order for
a new trial [443-445].

INDICTMENT found and returned in the Superior Court
on October 10, 1974.

A motion to dismiss was heard by Moynihan, J., and
the case was tried before Morse, J.

After review by the Appeals Court, the Supreme Judi-
cial Court granted leave to obtain further appellate review.

Thomas G. Shapiro for the defendant.

James W. Sahakian, Assistant District Attorney, for the
Commonwealth.

John Reinstein & Jeanne Baker, for the Civil Liberties
Union of Massachusetts, amicus curiae, submitted a brief.

HENNESSEY, C.J.   The defendant, Kevin Michael Man-
ning (Manning), was found guilty by a Superior Court
judge in a jury waived trial on both counts of a two count
indictment for distributing a class B controlled substance
(cocaine) in violation of G. L. c. 94C, § 32. He was sen-

tenced on count 1 to one year in a house of correction, sentence suspended for two years, and was placed on probation for two years; on count 2, he was sentenced to ten days in the house of correction, which sentence has been served. He appealed his conviction to the Appeals Court pursuant to G. L. c. 278, §§ 33A-33G, claiming error in the denial of his motion to dismiss the indictment, heard in the Superior Court before a different judge. The Appeals Court affirmed the convictions, with the provision that Manning be afforded a new trial if he so moved. *Commonwealth* v. *Manning,* 5 Mass. App. Ct. 25 (1977). We granted Manning's application for further appellate review on the sole issue of whether a new trial was the appropriate remedy for the constitutional violations found here.[1]

We conclude that the indictment against Manning should be dismissed as to both counts with prejudice. The undisputed facts of the case show wilful interference with Manning's constitutional right to counsel by two Federal officers who worked closely with the State prosecutor. We believe that the officers' conduct was of such an aggravated nature that dismissal of the indictment is the appropriate remedy.

The pertinent facts, as found by the Superior Court judge who heard and denied the defendant's motion to dismiss, are as follows.[2] On August 8, 1974, Manning was arrested at his home by State and Federal law enforcement officers and was charged with selling cocaine to a Massachusetts State police officer and Roger Marchand (Marchand), a special agent of the United States Drug Enforcement Administration. On August 9, 1974, Manning was arraigned in the First District Court of Southern Middlesex and entered pleas of not guilty to two complaints charging him with unlawful distribution of cocaine

---

[1] An amicus brief, urging dismissal of the indictment, was filed in this court by counsel for the Civil Liberties Union of Massachusetts.

[2] We summarize the judge's findings, although we include his exact language in some parts, as indicated by quotes.

on March 4, 1974, and on August 8, 1974. The case was continued until August 21, 1974, on which date Manning appeared with counsel and filed several motions. The hearing on the motions was continued to August 29, 1974, and the date of September 5, 1974, was set for trial or probable cause hearing.

On August 22, 1974, Special Agent Marchand telephoned Manning at his place of employment "without the knowledge or permission" of Manning's counsel. Marchand's purpose in calling Manning was "to induce the defendant to become an informer and to cooperate with the Federal agents in their on-going investigation of traffic in narcotics." During the course of the conversation, Marchand "made several disparaging remarks about [Manning's] counsel and the manner in which he was conducting the defense of the ... case" and "indicated that the tactics of defense counsel would not insure the defendant being kept out of jail."

Manning informed his counsel of this conversation the same day. On the next day, August 23, 1974, Manning telephoned Marchand's office in the presence of his counsel. Marchand was not in, and Manning spoke with another agent identified only as "George," who "in substance adopted the same line of conversation as Marchand had the previous day, speaking disparagingly of the tactics being pursued by counsel for the defendant and urged the defendant to cooperate with the Federal agents."[3]

On August 29, 1974, a hearing on the motions was held in the District Court, and the date for the hearing on the merits was changed from September 5, to October 10, 1974.

---

[3] "George" was never more fully identified and did not testify at the hearing on the motion to dismiss. The only testimony as to the substance of this conversation was that of the defendant Manning who testified that George told him that he had been in the office the previous day when Marchand telephoned Manning and had heard that conversation, "that Roger [Marchand] was offering [Manning] sound advice," that "[Manning]· should listen to him and he would take care of [him]," and that Manning "should be aware of big name lawyers that are into making lots of money and a big name for themselves but not really doing too much good for their clients."

Also on that day, defense counsel informed the assistant district attorney handling the case of Marchand's telephone call to the defendant. The assistant district attorney later spoke with Marchand, who confirmed both the call and its substance. On October 7, 1974, the defendant filed a motion in the District Court to dismiss the complaints on the ground of gross prosecutorial misconduct. Some time prior to October 10, 1974, Marchand requested grand jury time in order to obtain a direct indictment against the defendant, charging him with offenses identical to those charged in the complaints. The indictment was returned on October 10, 1974. On that same day, Manning and his counsel appeared in the District Court prepared to go forward with the probable cause hearing. At that time the Commonwealth represented to the court that a State police officer, whose role in the case is uncertain, was unable to be present and that the Commonwealth could not go forward without him. The court, without the consent of the defendant, continued the case until November 21, 1974.[4]

On October 31, 1974, Manning filed a motion in Superior Court to dismiss the indictment. After a hearing, the motion was denied. The motion judge found in substance that the misconduct alleged by the defendant had in fact taken place and that "[i]t is manifest that the conduct of Agent Marchand and his fellow agent, George, deserve strong condemnation. It is clear that conduct amounted to unwarranted interference with the relationship between the defendant and his attorney. There is no justification for the Government to attempt to deal with the defendant

[4] The facts are in some respects similar to those in *Commonwealth* v. *Thomas,* 353 Mass. 429 (1967), wherein this court dismissed an indictment which had been obtained by the Commonwealth while District Court proceedings were nearing dismissal of a complaint asserting the same criminal conduct of the defendant. Manning does not argue this ground. In view of the result we reach, we need not consider whether the indictments should be dismissed on the ground that the Federal officer (who was the prime mover in procuring the indictment) had acted for the purpose of evading the possible dismissal of the complaint by order of the District Court judge.

behind the back of his counsel." However, the judge further found that: (1) there was "not a serious impairment of the relation of counsel and client as a result of the misconduct of the two agents"; (2) defense counsel was able to proceed adequately and completely with the defense of the case; (3) the defendant had "confidence in his counsel"; and (4) the "ability of counsel to represent the defendant [had] not been adversely affected by reason of governmental misconduct." The judge concluded that the net effect of the governmental misconduct was harmless with respect to the defendant's right to effective assistance of counsel and to a fair trial.

The Appeals Court also strongly condemned the conduct of the two agents, characterizing the conduct as "egregious," but concluded that a new trial was the appropriate remedy on the theory that such remedy struck the proper balance between the need to deter such conduct and the societal impact of dismissing the indictment because of such conduct.[5] *Commonwealth* v. *Manning*, 5 Mass. App. Ct. 25, 31 (1977).

There can be no doubt here that the Federal agents violated Manning's Sixth Amendment right to counsel and concomitantly his right to a fair trial. The Commonwealth implicitly concedes in its brief that such a violation occurred. It argues, however, that the defendant failed to show that he was actually prejudiced by the agents' conduct and, therefore, any error was harmless. As a general

[5] The Appeals Court correctly concluded that the fact that the officers were Federal and not State agents was not material. Marchand was the arresting officer, the sole prosecution witness, and, as indicated by the findings of the Superior Court judge, the prime mover behind the direct indictment and, as such, must be considered part of the prosecution team. While it might be argued that it is unfair to the Commonwealth to dismiss a State indictment because of the misconduct of Federal agents, it is obvious from the record here that Marchand was not only a member of the prosecution team but also a major force in the conduct of the prosecution. We think that, if the Commonwealth chooses to allow Federal agents to influence the conduct of State prosecutions, it must bear any consequences flowing from the misconduct of those agents.

rule, "any violation of a constitutional right gives rise to presumptive prejudice, which normally requires a reversal of the conviction, in the absence of an affirmative showing by the Commonwealth that the error was harmless." *Commonwealth* v. *McDonald* *(No. 1)*, 368 Mass. 395, 399 (1975). In the case now before us, we need not invoke a presumption of prejudice, as implicit in the motion judge's finding that there had been no "serious" impairment of the attorney-client relationship is a finding that the defendant had in fact been prejudiced to some extent. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser* v. *United States*, 315 U.S. 60, 76 (1942). See, e.g., *Geders* v. *United States*, 425 U.S. 80 (1976); *O'Brien* v. *United States*, 386 U.S. 345 (1967); *Black* v. *United States*, 385 U.S. 26 (1966). We think the application of the harmless error rule singularly inapposite here.

Further, we are of opinion that the facts of the case demand that the indictment against the defendant be dismissed. We are confronted in this case not with the proverbial constable's blunder or even with good faith overzealousness in the pursuit of legitimate law enforcement aims. Rather, we have here a deliberate and intentional attack by government agents on the relationship between Manning and his counsel in a calculated attempt to coerce the defendant into abandoning his defense.[6] While a balancing test may be appropriate in determining the proper scope of judicially created exclusionary rules, see, e.g., *United States* v. *Janis*, 428 U.S. 433, 454 (1976); *United States* v. *Calandra*, 414 U.S. 338 (1974), we do not think it the proper course in the circumstances of this case.

The focus must be rather on the remedy necessary to

---

[6] Such conduct on the part of the agents arguably amounted to their attempting to plea bargain with the defendant behind the back of counsel. Such a practice has also been held to be a denial of the right to counsel. See, e.g., *Gallarelli* v. *United States,* 441 F.2d 1402 (3d Cir. 1971); *Shupe* v. *Sigler,* 230 F. Supp. 601 (D. Neb. 1964); *Anderson* v. *North Carolina,* 221 F. Supp. 930, 935 (W.D.N.C. 1963).

cure the impairment. While the Appeals Court is correct that the cases cited by the defendant resulted only in reversals of convictions and not dismissals of the indictments, 5 Mass. App. Ct. at 30, those were all cases in which subsequent trials could be purged of error. However, in the case now before us, the officers' misconduct was so pervasive as to preclude any confident assumption that proceedings at a new trial would be free of the taint.

Further, another trial, even if Manning is provided with counsel at public expense, may subject him to an inexcusable risk of a more severe sentence were he reconvicted. We think the grant of a new trial of dubious, if any, benefit to the defendant. We also think that a stronger deterrent against the type of conduct demonstrated here is necessary.

Prophylactic considerations assume paramount importance in fashioning a remedy for deliberate and intentional violations of constitutional rights. Such deliberate undermining of constitutional rights must not be countenanced. The specific misconduct present in this case is particularly troublesome because only when the importunings of government agents are unsuccessful will the matter come to the attention of the courts, and there is, in turn, a grave danger that the courts themselves may become the instrumentality through which government agents may effectuate threats to defendants regarding the consequences of asserting constitutional rights.

It may be that the only way to prevent such offensive and deliberate manipulation of criminal defendants is to formulate a per se rule which would mandate the dismissal of an indictment in cases in which government agents intentionally attempt to subvert the attorney-client relationship and the defendant's right to a fair trial. In the case now before us, we find it unnecessary to adopt such a rule. The indictment itself is so inextricably interwoven with the misconduct which preceded it that the only appropriate remedy here is to dismiss the indictment. However, while we at this time adopt no rule of general applicability,

we wish to leave no doubt that such conduct will not be tolerated in our criminal justice system.

The judgment of the Superior Court is reversed, the finding of guilty is set aside, and an order is to be entered dismissing the indictment with prejudice.

*So ordered.*