COMMONWEALTH *vs.* LEO J. MENCOBONI, JR.

No. 89-P-1075.

Middlesex. March 8, 1990. - April 13, 1990.

Present: BROWN, FINE, & JACOBS, JJ.

*Motor Vehicle*, Operating under the influence. *Evidence*, Breathalyzer test. *Practice, Criminal*, Dismissal, Assistance of counsel. *Constitutional Law*, Assistance of counsel, Right to obtain evidence.

Dismissal of a complaint for driving a motor vehicle while under the influence of intoxicating liquor was not required, in the absence of a showing of prejudice or a claim of improper police motives, on account of police officers' denying a defense attorney's requests to consult briefly at the police station with his client before the defendant made a determination whether to take a breathalyzer test. [505-507] BROWN, J., dissenting.

COMPLAINT received and sworn to in the Framingham Division of the District Court Department on May 25, 1988.

The case was heard by *Robert C. Campion*, J., on a motion to dismiss.

*David R. Marks*, Assistant District Attorney, for the Commonwealth.

*Fredric L. Ellis* for the defendant.

FINE, J. The defendant was arrested for operating a motor vehicle while under the influence of intoxicating liquor. He was taken to the Hopkinton police station at approximately 12:30 A.M. At approximately 12:45 A.M., the defendant was permitted to telephone his attorney. A police officer asked the attorney over the telephone if the defendant was going to take a breathalyzer test. The attorney answered that he was not sure but that the police should "start warming it up." The attorney arrived at the police station at approximately 1:00 A.M. Upon his arrival, the attorney asked to speak privately with the defendant to determine whether the defend-

ant would assent to taking a breathalyzer test. The request was denied. The defendant did not take the test. He was then taken to a cell. The attorney again requested a private conference with his client, and again the request was denied. The defendant was released on bail at approximately 2:20 A.M. The reason given by the police for denying the first request for a private conference was that they were required to keep the defendant in constant view for twenty minutes before administering the breathalyzer test (see 501 Code Mass. Regs. § 2.55 [1987]), and, short of officers in the field, they did not want to detain an officer to start the twenty-minute observation period over again. No justification was offered for the second denial, except that it was consistent with "policy."

On these undisputed facts, a District Court judge dismissed the complaint against the defendant. The judge determined that the denial of a private conference was a material factor in the defendant's failure to take the breathalyzer test, that the defendant had a right to confer privately with his attorney at the station, and that his right to counsel, therefore, was denied. The Commonwealth appealed. We agree with the Commonwealth that the case should not have been dismissed.

The defendant had no statutory or constitutional right to have the police administer a breathalyzer test to him. *Commonwealth* v. *Alano*, 388 Mass. 871 (1983). His only substantive rights with respect to a blood alcohol content test were those set forth in G. L. c. 263, § 5A, and the defendant was adequately protected when the police informed him of his right to secure an independent physical examination and granted him access to the telephone. *Id.* at 879. Compare *Commonwealth* v. *Andrade*, 389 Mass. 874, 877-882 (1983). *Commonwealth* v. *Brazelton*, 404 Mass. 783 (1989), decided after the motion to dismiss was allowed in this case, held that an arrested person has no Federal or State constitutional right to consult with an attorney before deciding whether to submit to a breathalyzer test. We think no meaningful distinction can be made between the facts in that case and the

present one. Further, the defendant's constitutional right to counsel had not attached at the time his attorney sought to confer with him in the cell. See *Commonwealth v. Jones,* 403 Mass. 279, 286 (1988). The judge's decision, therefore, cannot stand on its stated ground.

The defendant points out, correctly, that our courts have recognized, as a matter of fundamental fairness, that police officers may not purposefully interfere with a defendant's access to a specific attorney who wants to confer with the defendant and who the police know represents the defendant. See *Commonwealth v. McKenna,* 355 Mass. 313, 324-325 (1969); *Commonwealth v. Mahnke,* 368 Mass. 662, 692 (1975), cert. denied, 425 U.S. 959 (1976); *Commonwealth v. Sherman,* 389 Mass. 287, 291 (1983); *Commonwealth v. DiMuro, ante* 223, 226 & n.2 (1990); ABA Standards, The Defense Function § 4-3.1(d) (2d ed. 1979). See also *Commonwealth v. Manning,* 373 Mass. 438 (1977); *Commonwealth v. Lewin,* 405 Mass. 566, 586 n.13 (1989). Appropriate remedies have been fashioned in cases involving such interference. See, for example, *Commonwealth v. McKenna,* 355 Mass. at 325 (suppression of statements made during custodial interrogation where the defendant was not apprised of his attorney's efforts to speak with him); *Commonwealth v. Mahnke,* 368 Mass. at 692. Absent egregious prosecutorial misconduct or serious prejudice to a defendant, however, the severe remedy of dismissal has not been invoked. See *Commonwealth v. Cinelli,* 389 Mass. 197, 210, cert. denied, 464 U.S. 860 (1983); *Commonwealth v. Sherman,* 389 Mass. at 295. Cf. *Commonwealth v. Manning,* 373 Mass. at 443 (dismissal required where Federal agents wilfully interfered with the defendant's constitutional right to counsel and some prejudice resulted).

In this instance, the denial of a private conference with counsel had no adverse consequences for the defendant[1] with respect to his relationship with his attorney or his ability to

---

[1]Although the defendant's driver's license was suspended by the Registry of Motor Vehicles, it was reinstated, notwithstanding G. L. c. 90, § 24(1)(*f*), a month after his arrest.

obtain a fair trial. Contrast *Commonwealth* v. *Manning*, 373 Mass. at 444. Had he made inculpatory statements while in police custody they would be suppressed, but apparently he made none. The Commonwealth may not introduce at trial evidence of his failure to take the breathalyzer test. G. L. c. 90, § 24(1)(*e*). The decision in *Commonwealth* v. *Brazelton*, 404 Mass. at 785, prevents us from finding prejudice solely on the basis of the defendant's inability to present potentially exculpatory breathalyzer test results at trial.

We conclude that, in the absence of prejudice or any claim of improper motive on the part of the Hopkinton police, dismissal of the complaint against the defendant was not called for.[2] We would be remiss, however, if we failed to comment on the impropriety of the denial of counsel's reasonable request for a brief private conference with his client before the breathalyzer decision was made, or at least at some point during the defendant's detention at the police station. ABA Standards, The Defense Function § 4-3.1(c) (2d ed. 1979). In fact, the police station was equipped with a two-way mirror through which the defendant could have been observed, at least visually, while conferring with his attorney. It is hard to imagine what purpose is served by such inflexibility and reliance on wooden "policies." On the contrary, such conduct inevitably causes disrespect among citizens for those who enforce the law and places the successful prosecution of criminals at unnecessary risk.

*Order dismissing complaint reversed.*

---

[2]As a sanction for the improper police conduct, however, it would be within the trial judge's discretion to allow the defendant, should he choose to do so, to introduce evidence at trial as to the circumstances attending his failure to take the test to explain the absence of potentially exculpatory evidence. Compare *Commonwealth* v. *Cameron*, 25 Mass. App. Ct. 538, 549 (1988); *Commonwealth* v. *Holman*, 27 Mass. App. Ct. 830, 832 (1989). The trial judge may also exercise his discretion to prevent the Commonwealth from offering testimony about observations of the defendant's demeanor while in custody at the police station.

BROWN, J. (dissenting). I think that where, as here, there was deliberate misconduct on the part of law enforcement officers, we should implement a prophylactic rule by which the complaint against the defendant is dismissed. See *Commonwealth* v. *Manning*, 373 Mass. 438, 443-445 (1977). "It cannot be asserted too often that the [government] must 'take care to behave itself'" (citation omitted). *Commonwealth* v. *Felton*, 16 Mass. App. Ct. 63, 66 (1983).

As the majority opinion points out, the cases of the Supreme Judicial Court have established that a defendant has no statutory or constitutional right to have the police administer a breathalyzer test to him. Nevertheless, it is still the general policy in this Commonwealth to *encourage* persons arrested for drunk driving to take the test. G. L. c. 90, § 24(1)(*f*). It is worth noting that it appears that the defendant in this case did not actually refuse to take the test. The defendant's attorney testified that, when asked whether he would take the test, the defendant replied that he would "do what my attorney tells me to do." When the attorney indicated that he needed to speak with the defendant privately before he could let the booking officer know of the decision, the officer indicated that a private conference was not possible, that the response given would be deemed to be a refusal, and that the officer at that point signed the refusal form. Similarly, the booking officer testified that the defendant stated that he could not make a decision to take the test until he was given an opportunity to consult privately with his attorney. The officer indicated that a conference "would not be possible and that his not taking the test would be considered a refusal." The officer also testified that the attorney protested that "it was not a refusal." I do not think there is any question that the booking officer did not make much of an attempt to get a breathalyzer test in this case. The least I can say is he gave up too easily; at most, he may have effectively prevented the defendant from taking the test.[1] Com-

---

[1] It may not even be possible for attorneys to avoid the situation presented in this case by addressing the issue of whether to take a breathalyzer test in the first phone call they receive from an arrested cli-

pare *Commonwealth* v. *Alano*, 388 Mass. 871, 872 (1983) (defendant consented to test; all three breathalyzer machines at station were in disrepair; shift commander denied arresting officers' request to transport defendant to working machine).

There is, of course, no indication that the defendant in this case was attempting a stalling maneuver, perhaps delaying a test until he felt he could pass it. The attorney arrived at the station within half an hour after the defendant was arrested, and the maximum delay attributable to the requested private conference (if the two-way mirror was not used) would have been twenty minutes or so.[2] Even if we were to accept the lame excuse the police offered for their initial refusal to allow the attorney to confer with the defendant, nothing has been presented, nor can anything be put forth, that would justify or excuse the second denial of access. See *Commonwealth* v. *Mahnke*, 368 Mass. 662, 692 (1975) ("police may not thwart counsel who seeks to confer with a client"), cert. denied, 425 U.S. 959 (1976). I firmly believe that any unjustified intentional interference with the attorney-client relationship in this day and age calls for severe and prompt measures by the judicial system, particularly in situations, such as the present, where it is safe to assume no administrative disciplinary action was taken against the officers involved in this outrageous and needless power play.

We cannot constantly warn and then continually excuse (e.g., by finding no apparent prejudice) such a blatant infringement of the right to counsel. Cf. *Glasser* v. *United States*, 315 U.S. 60, 76 (1942) ("[t]he right to have the as-

---

ent. See *Commonwealth* v. *Brazelton*, 404 Mass. 783, 784 (1989)(officials can require that defendant decide whether to take test before being allowed access to telephone).

[2]If *Commonwealth* v. *Brazelton*, 404 Mass. 783 (1989), is grounded in the fear that drunk drivers could take advantage of a right to consult an attorney before deciding whether to take a breathalyzer test, using any such right to delay the test until the results were stale and of more questionable accuracy, *id.* at 785, surely that "formidable practical problem[]" can be left to the jury, who can take any delay into account in weighing the value of a test. See *Commonwealth* v. *Marley*, 396 Mass. 433, 438 (1985).

sistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial"). I share the frustration of the motion judge, who noted in his memorandum and order allowing the motion to dismiss that he was allowing the motion because he was "unable to fashion a more appropriate remedy," and I am sceptical that the majority's comment on the "impropriety" of the police conduct in this case will serve to curb similar future abuses. I think the time has come to put teeth in our bite.[3] I accordingly would uphold the trial judge's allowance of the defendant's motion to dismiss.

---

[3]Cf. *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 505 (1979).