Arthur J. CINELLI, Plaintiff, Appellee,

v.

Michael CUTILLO and Robert Nunez, Defendants, Appellants.

No. 89–1354.

United States Court of Appeals, First Circuit.

Heard Dec. 4, 1989.
Decided Feb. 23, 1990.

---

5. Visiting "the sins of the attorney ... on the client" is of course inherent in "the nature of the adversary system." *Damiani*, 704 F.2d at 16; *see Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962). And as we noted in *Zavala Santiago*, "[a]lthough courts have been reluctant to impute the misconduct of plaintiffs' counsel to the plaintiffs in cases where there have been rela-

tively short periods of unreasonable delay, ... we have less reluctance here where the nature of the claim suggested the need for expedition." 553 F.2d at 713 n. 2. In any event, given the tenuous nature of the federal claims here, we perceive no great hardship in relegating plaintiffs to the Commonwealth courts, where they seemingly should have been all along.

detectives on the police department of Revere, Massachusetts. Although this court has considered this case once before, it is necessary to review the facts and our prior decision to provide the context for this opinion.

## I. BACKGROUND

On May 7, 1981, Cinelli was arrested on charges of armed robbery and assault with intent to commit murder. The assault consisted of shooting and seriously wounding an officer of the Medford Police Department. Cinelli's arrest came after an extensive investigation by local police departments, including that of Revere.

At his arraignment, Cinelli was represented by court-appointed counsel. Subsequently, Cinelli's family retained his present counsel, Edward J. McCormick, III. McCormick represented Cinelli at a bail review hearing on May 8, 1981, and has represented him since then. Because he was unable to make bail, Cinelli was detained in an isolation cell in the Billerica House of Corrections.

On May 12, Detective Cutillo received an anonymous phone call telling him that Cinelli wanted to speak to him. Cutillo and his partner, Nunez, went to the Billerica House of Corrections where they interviewed Cinelli.

At some time following the interview, Cinelli brought a motion to dismiss the indictment claiming that during the interview the two detectives wilfully interfered with his constitutional right to counsel and to a fair trial. There was a hearing on the motion before Massachusetts Superior Court Justice Paul K. Connolly, who denied the motion. Our recitation of the facts is derived from the record of the motion hearing and, where the testimony of the witnesses differs, from the findings of the superior court justice.

After the two detectives arrived at the jail, but prior to the interview, Cinelli signed a waiver that stated: "Under your constitutional rights, you do not need to talk to any officers without your lawyer being present. Whether you talk to the

Ira H. Zaleznik, with whom Lewin & Rosenthal, Boston, Mass., were on brief for defendants, appellants.

Edward J. McCormick, III, with whom McCormick & Maitland, Norfolk, Mass., were on brief for plaintiff, appellee.

Before CAMPBELL, Chief Judge, and COFFIN and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by defendants-appellants Michael Cutillo and Robert Nunez from a summary judgment denying them qualified immunity. Cutillo and Nunez are

above officer(s) or official(s), please indicate and sign." This was followed by two sentences stating: "I will [will not] voluntarily talk to the above officials." Cinelli signed under the sentence stating "I will voluntarily talk," etc. Cinelli claims that the waiver was folded when it was handed to him, that he did not read it before he signed it, and he signed only because he was told by the jail officer that if he wanted to get out of the "hole" he had to sign it. The jail officer testified that he gave the waiver form to Cinelli open, had no conversation with him at all and that Cinelli looked at the form before signing it.

Cutillo, who had arrested Cinelli on several occasions in the past, conducted most of the interrogation. He testified in essence as follows: He did not ask Cinelli to cooperate in the investigation. Cinelli told him that he did not have a lawyer at the time but that his mother was getting him one. He indicated to Cinelli that because of the system, Cinelli might be in jail for a year before his case came to trial. Cutillo testified that all during the interview Cinelli insisted that he was not involved in the robbery and assault.

Cinelli's testimony differed sharply from that of Cutillo. According to Cinelli, shortly after the interrogation started, he asked "Where's my lawyer, isn't he supposed to be here." Cutillo then said in effect that there was no point in having a lawyer because in addition to officer McGlynn (the police officer shot during the robbery), "we have another eye witness." Cinelli was then advised by Cutillo that if he would talk to them "we can make it easier on you." Cinelli further testified that Cutillo told him if he did not cooperate, Cutillo would make sure that he got life.

We now turn to the pertinent superior court findings:

> In view of the totality of circumstances in the present case, the court is of the firm belief that the defendant's waiver of counsel prior to his conversation with Detectives Cutillo and Nunez on May 12,

1981, was voluntarily, knowingly and intelligently waived.[1]

The detectives advised the defendant that the Commonwealth's case against him appeared to be strong. The detectives intimated that no lawyer would be able to help the defendant, that the defendant could spend up to a year in jail awaiting trial and that the defendant would benefit by cooperating with the police in identifying other participants in the crime. The detectives told the defendant he could receive a life sentence for the crime he was charged with.

At the time the conversation of May 12th took place, Detectives Cutillo and Nunez had reason to believe the defendant had the right to have counsel present during their jailhouse interview. Both detectives admit their purpose in visiting the defendant was to see if he would co-operate with the police investigation, although the detectives claim they went to Billerica believing the defendant had requested to see him. At some point during the conversation, the defendant asked where his lawyer was and suggested that his lawyer should be present. Both detectives deny having known the identify [sic] of the defendant's counsel when they visited the defendant on May 12th, and neither detective made any attempt to identify or locate the defendant's attorney before or during the May 12th meeting.

In an effort to secure the co-operation of the defendant in the ongoing investigation of the Medford robbery, police overzealousness gave way to impropriety. The court considers the detectives' comments regarding the strength of the Commonwealth's case against the defendant, the length of time possible before the defendant's trial date, and the suggestion that the defendant could receive a life sentence if convicted wholly inappropriate.

While it is true the defendant could have cut off the conversation at any

---

**1.** In arriving at this conclusion the court reviewed the testimony carefully and meticulously applied the "totality of the circumstances" test.

point, and the defendant here elected not to do so, the defendant did make a reference to his attorney being absent and questioned whether the detectives' suggestions were proper. The right to cut off questioning is a "critical safeguard" —*Michigan v. Mosely*, 423 U.S. 96[96 S.Ct. 321, 46 L.Ed.2d 313] (1975)—and that right is "scrupulously honored" in this Commonwealth. See *Commonwealth v. Brant*, Mass.Adv.Sh. (1980) 1473, 1479–1483 [380 Mass. 876, 406 N.E.2d 1021]; *Commonwealth v. Dustin*, 373 Mass. 612, 616[368 N.E.2d 1388] (1977), cert. denied, 435 U.S. 943 [98 S.Ct. 1523, 55 L.Ed.2d 540] (1978). Once the defendant here made reference to his rights of counsel, the detectives should not have pursued any additional conversation whatsoever. Furthermore, even before the defendant Cinelli alluded to the absence of his attorney, the detectives did not have the right to direct the conversation in a manner disparaging to Cinelli's defense. See generally, *Commonwealth v. Manning, supra* [373 Mass. 438, 367 N.E.2d 635 (Mass.1977) ].

On September 11, 1981, the superior court issued its findings and rulings and denied the motion to dismiss the indictment. Cinelli was subsequently tried and convicted. His conviction was upheld by the Massachusetts Supreme Judicial Court. *Commonwealth v. Cinelli*, 389 Mass. 197, 449 N.E.2d 1207 (Mass.1983).

On May 10, 1984, Cinelli brought an action based on 42 U.S.C. § 1983 against the present appellants Cutillo and Nunez, and against the cities of Revere and Medford, Massachusetts, alleging a violation of his sixth amendment right to counsel while he was being interrogated in jail by Cutillo and Nunez. Cinelli consented to a dismissal of the complaint against the municipalities. Defendant police officers moved for summary judgment on two grounds: that Cinelli could not prove his sixth amendment claim, and qualified immunity. The district court granted summary judgment for the defendants on the first ground. It did not reach the qualified immunity claim. We reversed, holding: "On the record before the district court there was a genuine issue

of material fact as to whether Cinelli's defense of the criminal action was prejudiced by the communication of his defense strategy to Cutillo and Nunez." *Cinelli v. City of Revere*, 820 F.2d 474, 479 (1st Cir.1987), cert. denied, 485 U.S. 1037, 108 S.Ct. 1600, 99 L.Ed.2d 915 (1988).

We refused to consider the defense of qualified immunity because the district court did not reach it. 820 F.2d at 479 n. 4. On remand the defendants moved for summary judgment on the ground of qualified immunity. The district court denied the motion by endorsement on the face of the motion without written finding or an opinion. This appeal followed.

## II. THE DOCTRINE OF QUALIFIED IMMUNITY

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The doctrine has been honed by subsequent decisions. See *Malley v. Briggs*, 475 U.S. 335, 341, 344–45, 106 S.Ct. 1092, 1096, 1097–98, 89 L.Ed.2d 271 (1986); *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985); *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984). The honing process reached its sharpest edge in *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), in which the court defined what constitutes a clearly established right:

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell, supra*, [472 U.S.] at 535, n. 12 [105 S.Ct. at 2820, n. 12]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Summary Judgment Standard of Review*

In *Mitchell v. Forsyth*, 472 U.S. at 530, 105 S.Ct. at 2817, the Court held: "a dis-

trict court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." In *Bonitz v. Fair,* 804 F.2d 164, 166–69 (1986), this court held that the interlocutory review was limited to scrutinizing the allegations of the complaint to determine whether the acts alleged, if proven, violated law that was clearly established at the time of the cause of action. *Anderson v. Creighton* caused us to reformulate the standard of review established in *Bonitz v. Fair.* In *Unwin v. Campbell,* 863 F.2d 124 (1st Cir.1988), we held that *Anderson* mandated a broader scope of interlocutory review:

We thus conclude that we have jurisdiction to review a district court's denial of qualified immunity on grounds that a genuine issue of material fact exists as to the factual predicate of a qualified immunity claim. In such a review, we must examine the discovered facts regarding defendants' conduct relevant to the immunity claim and, applying normal summary judgment principles, determine whether a genuine issue does or does not exist concerning qualified immunity.

*Id.* at 132.

There are two basic issues to be decided in an appeal from a summary judgment on qualified immunity: whether the right claimed to be violated was clearly established at the time of the incident; and whether it was objectively reasonable for the public official to believe that the action taken did not violate the clearly established right. *Yerardi's Moody Street Restaurant and Lounge v. Board of Selectmen,* 878 F.2d 16, 20 (1st Cir.1989).

## III. APPLICATION OF THE LAW

The factual basis for our determination whether appellants are entitled to qualified immunity as a matter of law is the findings made by the Massachusetts superior court on the motion to dismiss the indictment. We relied on these findings in our prior opinion and the parties have not questioned them. There are two distinct but related issues. First, in light of the voluntary, knowing and intelligent waiver of counsel given prior to the start of the interrogation, would a reasonable police officer have known that the interrogation should have ceased when Cinelli asked about his lawyer being present. The second issue is whether a reasonable police officer should have known that it was a violation of Cinelli's constitutional rights to coerce him into cooperating with the police by telling him that his lawyer could not help him and that he would get a life sentence if he did not cooperate.

We start with the first issue. Defendants argue that not until the decision of *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), more than four and one-half years after this incident, was it clearly established that the police have a duty to stop a custodial interrogation once a defendant requests that his lawyer be present. The question in *Maine v. Moulton* was,

whether respondent's Sixth Amendment right to the assistance of counsel was violated by the admission at trial of incriminating statements made by him to his codefendant, a secret government informant, after indictment and at a meeting of the two to plan defense strategy for the upcoming trial.

*Id.* at 161, 106 S.Ct. at 479. The Court held that the state clearly violated the petitioner's rights when it arranged to record conversations between the petitioner and the undercover informant. *Id.* at 176, 106 S.Ct. at 487. The Court during the course of its opinion cited to and quoted from prior cases establishing the principle that the right to counsel guaranteed by the sixth amendment "is indispensable to the fair administration of our adversarial system of criminal justice." *Id.* at 168–69, 106 S.Ct. at 483.

Neither *Moulton* nor the cases cited therein covers the situation confronting us here: a question raised by a defendant about his lawyer being present after the defendant has voluntarily, knowingly and intelligently executed a waiver of his right to have counsel present. Although there

may be cases covering this situation, counsel has cited none and we have been unable to find any directly on point. It is arguable that in light of the long established importance of the sixth amendment right to counsel, the police officers should have known that the lawyer question revoked the waiver and required that the interrogation cease. On the other hand, it could be found that the contours of Cinelli's constitutional right to have the interrogation cease when he inquired about his lawyer were blurred by the waiver enough to make it less than clearly established. We need not decide this question, however, because on the second issue it is clear that appellants are not entitled to qualified immunity as a matter of law.

■ Our starting point is the case with which all police officers are familiar, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It held, *inter alia:* "that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation." *Id.* at 474, 86 S.Ct. at 1627. It has long been recognized that the right to counsel guaranteed by the sixth amendment is an indispensable part of our criminal justice system. *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963); *Johnson v. Zerbst*, 304 U.S. 458, 462–63, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). In *Commonwealth v. Manning*, 373 Mass. 438, 367 N.E.2d 635 (1977), the court dismissed an indictment because of disparaging remarks by federal agents about defense counsel and the suggestion that he would not keep defendant out of jail. *Id.* 367 N.E.2d at 636. The court found there was a "deliberate and intentional attack by government agents on the relationship between Manning and his counsel in a calculated attempt to coerce defendant into abandoning his defense." *Id.* 637 N.E.2d at 638 (footnote omitted). Although the circumstances in *Manning* were more egregious than here, *Manning* clearly outlined the contours of a

defendant's constitutional rights in this respect for Massachusetts police officers.

We hold that a reasonable police officer should have known that it would be a violation of a defendant's constitutional rights to denigrate the role of his lawyer and attempt, in the lawyer's absence, to coerce a defendant into cooperating with the police.

Our holding is buttressed by the Policies and Procedures of the Revere Police Department for Interrogating Suspects and Prisoners in effect at the time of Cinelli's interrogation. The pertinent provisions are as follows:

> The basic restraints of police questioning have been the constitutional right against self-incrimination as set forth in the 5th Amendment which states that "no person shall be compelled in a criminal case to be a witness against himself." The 6th Amendment provides the right of assistance of counsel and these two rights are closely related if the right against self-incrimination is to be suitably protected.
>
> No officer shall in any way by speech and/or act attempt to improperly require a subject to relinquish his rights. Physical abuse, browbeating, cajoling or otherwise pressuring a subject are strictly forbidden.

Appellants, as Revere Police Officers, knew or should have known that the statements made by them during Cinelli's interrogation relative to the inability of a lawyer to help him and the threat of a life sentence for refusal to cooperate violated Cinelli's constitutional rights. We hold that, on this issue, the detectives were not entitled to qualified immunity as a matter of law.

■ We close by noting that in a supplement to our prior opinion, we held that the doctrine of collateral estoppel did not preclude plaintiff from litigating the question of prejudice at trial. 820 F.2d at 480. We now hold that the doctrine of collateral estoppel does not apply to the defense of qualified immunity because that issue was not considered by the Massachusetts superior court.

*Affirmed.* Remanded for a trial on the merits.

Costs awarded to appellee.