**Gerard J. BOURQUE**

v.

**The TOWN OF BOW, et al.**

**No. C–88–340–L.**

United States District Court,
D. New Hampshire.

May 2, 1990.

Wiggin & Nourie by Diane M. Smith, Manchester, N.H., for plaintiff.

McLane, Graf, Raulerson & Middleton by Robert E. Jauron and Jack B. Middleton, Manchester, N.H., for defendants.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

LOUGHLIN, Senior District Judge.

Plaintiff, Gerald T. Bourque, filed this civil rights action alleging the defendants unlawfully terminated him from his position as a town employee. Plaintiff sued the Town of Bow, New Hampshire, and its road agent, Leighton Cleverly. Also named as defendants are three selectmen for the Town of Bow: Eric E. Anderson, Alfred H. Ward, and Sara H. Swenson. The latter three defendants have been sued in their individual as well as their official capacities. The court's jurisdiction is based on 28 U.S.C. § 1331 and § 1343.

Plaintiff alleges the following facts. He was hired by the Town of Bow on February 20, 1985, as a mechanic, although he subsequently assumed additional duties that were not within his job description. Defendant Cleverly was plaintiff's supervisor.

Plaintiff alleges that his own work was performed satisfactorily and he was never reprimanded. Nevertheless,

> [d]uring Gerard Bourque's term of employment he was regularly subjected to harassment by Leighton Cleverly, including but not limited to, criticizing the plaintiff's reliance on repair manuals when he knew it was necessary for proper completion of repairs, telling the plaintiff he had to do "perfect repairs" but that he was not allowed to spend money to do so, instructing the plaintiff's helper to break into the plaintiff's tool box while the plaintiff was on sick leave and setting off firecrackers behind the plaintiff while he was in the process of completing a welding job.

Complaint, ¶ 12.

Plaintiff discussed the alleged harassment with Defendant Anderson, who assured plaintiff "the problems would be addressed." *Id.*, ¶ 13. Plaintiff also complained to Anderson of certain "shortcomings" of Cleverly, including plaintiff's allegations that Cleverly consumed alcoholic beverages while working, abused town vehicles, and failed in his duties as supervisor.

Elections for the Town of Bow were held on March 8, 1988. Prior to that day, plaintiff's political support was solicited by a campaign worker of defendant Swenson. The plaintiff declined to lend such support. Subsequently, Swenson was successful in her bid for a seat on the board of selectmen. Plaintiff alleges that defendant Cleverly, who was a supporter of Swenson, increased his harassment of plaintiff after the election.

Ultimately, plaintiff alleges his pre-existing heart condition was exacerbated by Cleverly's harassment. On April 1, 1988, plaintiff was hospitalized with severe angina pain. Plaintiff's physician wrote to defendant Anderson, stating "Cleverly's harassment of plaintiff constituted a threat to plaintiff's health and life." *Id.*, ¶ 18. Plaintiff met with the Board of Selectmen on April 5, 1988, concerning his health condition and problems with Cleverly. Subsequently, plaintiff was advised by the selectmen that the town desired his continued employment but his job required working with defendant Cleverly. The selectmen also advised plaintiff that they were "willing to abide" by any decision plaintiff made concerning his employment.

In writing, plaintiff then requested "a few weeks sick leave." *Id.*, ¶ 20. Two days after the selectmen received plaintiff's request, he was informed by the selectmen that his employment was terminated immediately due to his "expressed inability to work with Mr. Cleverly and the Board of Selectmen." *Id.*, ¶ 21. Plaintiff's employment with the Town of Bow was terminated on April 14, 1988.

Plaintiff then filed this suit, claiming his termination by the Town of Bow was motivated by bad faith and malice and was based on retaliatory motives, that defendants Cleverly and Swenson intentionally and negligently caused plaintiff's severe emotional distress, and that the defendants have violated plaintiff's constitutionally secured rights by their actions. Plaintiff seeks recovery for economic and personal injuries he sustained as a result of the defendants' acts.

The defendants have moved for summary judgment on all of plaintiff's claims.

Summary judgment is proper only if, viewing the record in the light most favorable to the nonmoving party, the documents on file disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988); Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; Oliver*, 846 F.2d at 105. The moving party initially must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has made the required

showing, the adverse party must "go beyond the pleadings" and designate specific facts to demonstrate the existence of a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553; *Oliver*, 846 F.2d at 105; Fed.R.Civ.P. 56(e). The federal rules "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

## I. *Wrongful Discharge*

In his first claim, plaintiff alleges he was wrongfully discharged as a result of his complaints against his supervisor and his refusal to support the candidacy of defendant Swenson.

The legal theory of wrongful discharge, as it has developed in New Hampshire, was outlined by this court in *Vandegrift v. American Brands Corporation*, 572 F.Supp. 496 (D.N.H.1983):

> In *Monge v. Beebe Rubber Company*, 114 N.H. 130, 133, 316 A.2d 549, 551 (1974), the Supreme Court held that termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the at-will employment contract....
>
> The New Hampshire Supreme Court in *Howard v. Dorr Woolen Company*, 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980), construed *Monge* to apply only to a situation where an employee is discharged because he performed an act that public policy would encourage, or refused to do that which public policy would condemn.... Howard cast public policy into the limelight but drew bad faith, malice, and retaliation backstage.

*Id.* at 497–98; *accord Brewer v. K.W. Thompson Tool Co.*, 647 F.Supp. 1562, 1564–65 (D.N.H.1986).

The following year, the New Hampshire Supreme Court dispelled any seeming inconsistencies resulting from its decisions in *Monge* and *Howard*, in *Cloutier v. Great Atlantic & Pacific Tea Company*, 121 N.H. 915, 436 A.2d 1140 (1981). In *Cloutier*, the court fashioned a two-part test. The plaintiff must first show his discharge was motivated by the defendant's bad faith, malice, or retaliation. *Id.* at 921, 436 A.2d 1140; *Monge*, 114 N.H. at 133, 316 A.2d 549. "Second, the plaintiff must demonstrate that he was discharged because he performed an act that public policy would encourage, or refused to do something that public policy would condemn." *Cloutier*, 121 N.H. at 922, 436 A.2d 1140; *Howard*, 120 N.H. at 297, 414 A.2d 1273.

With respect to the latter half of the *Cloutier* test, the court held that the public policy in issue need not be "enunciated in a statute." *Cloutier*, 121 N.H. at 292, 436 A.2d 1140. Nor is it required that the public policy be so strongly and clearly stated that its existence would "be established or not established as a matter of law...." *Id.* at 924, 436 A.2d 1140. Rather, the determination of whether such a public policy exists is usually an issue requiring jury determination. *Id.*

The defendants set forth several arguments in favor of their motion for summary judgment on Count I. First, defendants argue that the plaintiff has no claim against the defendants as individuals since the plaintiff was not employed by the defendants in their individual capacity. Plaintiff does not dispute that he was employed only by the Town of Bow. Since the existence of an employment contract is, perhaps, the most fundamental prerequisite to a claim of wrongful discharge, *see, e.g., Vandegrift*, 572 F.Supp. at 499, the court summarily grants judgment to the defendants on Count I insofar as it states a claim against the defendants in their individual capacity.

The defendants also argue that summary judgment is appropriate on Count I since there are no material issues of fact and the plaintiff has failed to make a *pri-*

ma facie showing that he was wrongfully discharged. The defendants contend that it is undisputed that the plaintiff was discharged as a result of his inability to get along with his supervisor, defendant Cleverly. In support of their argument, the defendants submit their own affidavits and deposition testimony, plaintiff's deposition testimony and his answers to the defendants' interrogatories, a sworn statement of a witness to an incident alleged by plaintiff, and several documents, including correspondence between the parties and copies of reports evaluating plaintiff's performance while employed by the Town of Bow. Viewing this evidence in the light most favorable to the plaintiff, the court is satisfied that the defendants have met their burden, under Rule 56, of establishing no material issue exists concerning plaintiff's claim of wrongful discharge.

Under Rule 56(e), the plaintiff may not rest on "mere allegations or denials" of the defendants' motion, but "must set forth specific facts showing there is a genuine issue for trial." The plaintiff states that such a genuine issue exists because the selectmen gave varying accounts during their depositions concerning when the decision to fire plaintiff was made by the board. To a picayune degree, the defendants' testimony does diverge on this point. Even so, this fact does not prevent the granting of summary judgment because it is not material: the dispute does not concern the salient issue in this case, i.e., why plaintiff was fired.

Plaintiff also argues that his claim of wrongful discharge resulting from his complaints against his supervisor cannot be determined on a motion for summary judgment in light of the Supreme Court's holding in *Cloutier,* 121 N.H. at 924, 436 A.2d 1140. While it is true that in many cases, the question of whether the plaintiffs' termination involves a question of public policy is an issue best left to a jury, *id.,* neither the New Hampshire Supreme Court nor this court has ruled that the issue can never be determined as a matter of law. *See, e.g. id.; Mellitt v. Schrafft Candy Co.,* No. 80–513–D, slip op. (D.N.H. Dec. 21, 1981) *aff'd,* 685 F.2d 421 (1st Cir.1982) (un-

published opinion). To the contrary, this court has held that "[w]here it is clear that plaintiff cannot articulate an expression of public policy as a matter of law, there is no fact question for the jury to decide." *Mellitt,* slip op. at 8.

The plaintiff argues that since the Board of Selectmen failed, in plaintiff's opinion, to "appropriately" investigate plaintiff's complaints about his supervision prior to plaintiff's dismissal, public policy is implicated. The court disagrees. The selectmen testified that plaintiff advised them of his complaints against Cleverly, and after speaking to Cleverly regarding these complaints, the selectmen determined that no further investigation was warranted. The fact that plaintiff was dissatisfied with the selectmen's response to his complaints will not support a claim for wrongful discharge in New Hampshire.

Nor does the fact that plaintiff was subsequently discharged by the selectmen support such a claim. Giving plaintiff every favorable inference from the facts he alleges, it appears that plaintiff was discharged because he legitimately spoke out against his supervisor. While it may appear to plaintiff that the wisest course of conduct would be to retain plaintiff and discharge the refractory employee, the matter is purely a managerial concern. Plaintiff complains about an internal, not public, policy, i.e., that the selectmen chose to fire him rather than defendant Cleverly, or rather than investigate plaintiff's allegations any further.

As the defendants point out, public employees generally have no cause of action when they are dismissed for complaining about what they perceive to be poor management by their supervisors. *See Smith–Pfeiffer v. Supt. of the Fernald State School,* 404 Mass. 145, 533 N.E.2d 1368 (1989); *Rossi v. Pa. State Univ.,* 340 Pa.Super. 39, 489 A.2d 828 (Pa.Super.1985). This rule is in accord with that applying to private employers, simply, that "a discharge for business reasons is not actionable." *Vandegrift,* 572 F.Supp. at 496. Even if the defendants' treatment of plaintiff was harsh and unfair, it cannot be said

that public policy is implicated when a public employee disagrees with a managerial decision. To hold otherwise would be to require "just cause" to terminate an at-will employee, simply because the employee happens to be employed by the public sector.

Accordingly, the court finds that plaintiff's allegation that he was fired in retaliation for lodging complaints about his supervisor fails, as a matter of law, to state a claim of wrongful discharge.

■ In response to the plaintiff's allegation that his discharge was politically motivated, the defendants submit the affidavits of the selectmen, who unanimously state that they had no knowledge of plaintiff's political affiliations and that politics were not considered when the decision to fire plaintiff was made. In his objection to the defendant's motion the plaintiff has submitted his own affidavit, wherein he describes several incidents he alleges support his claim.

First, Swenson's aunt asked plaintiff to place a campaign sign on his lawn prior to the elections. Second, after plaintiff's meeting with the selectmen concerning his health condition and problems with Cleverly, Swenson looked at plaintiff and said, "You don't know me." Plaintiff states he believed Swenson's statement was intended as a threat. Finally, plaintiff states that defendant Cleverly, an active and open supporter of Swenson, increased his harassment of plaintiff after Swenson was elected.

If as plaintiff contends, his discharge was politically motivated, public policy is implicated. The first amendment protects most employees "from dismissal for reasons of 'political affiliation'...." *Gaztambide–Barbosa v. Torres–Gaztambide,* 902 F.2d 112, 113 (1st Cir.1990). To dismiss an employee for refusing to support an elected official is an act generally condemned by the courts, since such "patronage dismissals severely restrict political belief and association" and run counter to first amendment freedoms. *Elrod v. Burns,* 427 U.S. 347, 372, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976).

Although the incidents described by plaintiff in support of the claim that his dismissal was politically motivated appear insubstantial in view of the record as a whole, the court is mindful that summary judgment procedures should be used sparingly in cases where a disputed issue exists concerning motive or intent, *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), *cited in Lipsett v. Univ. of P.R.,* 864 F.2d 881, 895 (1st Cir.1988), since a witness' credibility takes on special importance. *Lipsett,* 864 F.2d at 895; *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir.1983); *cf. Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) (even where "motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported allegations").

Giving plaintiff every favorable inference from the facts he alleges, *Poller,* 368 U.S. at 473, 82 S.Ct. at 491, it appears that plaintiff has set forth specific facts which, if believed, might lead a jury to conclude that his dismissal was the result of his refusing to support defendant Swenson's campaign. *See* Fed.R.Civ.P. 56(e). Accordingly, the defendants are not entitled to judgment on plaintiff's wrongful discharge claim insofar as that claim is premised on the basis that plaintiff's discharge was the result of his failure to provide political support to Sarah Swenson.

■ In Count I, plaintiff seeks to recover for personal, as well as economic injuries flowing from his dismissal. It is well established that an employee may not maintain a common-law action against his employer for personal injuries "arising out of the employment relationship," *O'Keefe v. Associated Grocers of N.E., Inc.,* 120 N.H. 834, 835–36, 424 A.2d 199 (1980), *cited in Holzworth v. Fuller,* 122 N.H. 643, 645, 448 A.2d 394 (1982), since such a claim is barred by New Hampshire Workmen's Compensation statute, N.H. RSA 281:12. Contrary to the plaintiff's assertions, this court has previously held that personal in-

juries, as defined by N.H. RSA chapter 281, are not recoverable in a wrongful discharge action. *Dyment v. Elektrisola, Inc.*, No. C–86–372–D, slip op. at 15–16 (D.N.H. May 26, 1987) (order on motion to dismiss); *Brewer v. K.W. Thompson Tool Co.*, 647 F.Supp. 1562, 1565 (D.N.H.1986); *see also Monge*, 114 N.H. at 134, 316 A.2d 549. In accordance with the foregoing, the court concludes that plaintiff's claims for personal injuries arising from his allegedly wrongful discharge, including permanent physical and psychological damage and emotional distress, are barred by N.H. RSA 281:12.

## II. *Intentional Infliction of Emotional Distress*

Plaintiff alleges that defendants Cleverly and Swenson knew that the plaintiff had a pre-existing heart condition, and intentionally caused severe emotional distress to plaintiff through their continued harassment of him. Complaint, paras. 30, 31. Plaintiff recites numerous incidents he alleges demonstrate he has a viable claim for intentional infliction of emotional distress.

This state does recognize the tort of intentional infliction of emotional distress. *See, e.g. Chamberlin v. 101 Realty, Inc.*, 626 F.Supp. 865, 868 (D.N.H.1985) (and cases cited therein). The elements of the cause of action are as outlined by the Restatement (Second) of Torts § 46:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Id.* at 869 n. 2; *Brewer* 647 F.Supp. at 1567.

■ Liability will only attach where the defendant's conduct has been truly extreme and outrageous. *Chamberlin*, 626 F.Supp. at 869; *Brewer*, 647 F.Supp. at 1567.

■ After carefully reviewing plaintiff's allegations concerning the conduct of defendants Swenson and Cleverly, the court finds that the plaintiff has failed, as a matter of law, to allege conduct which could support recovery on a claim of emotional distress. Simply, while the conduct complained of may have been personally offensive to the plaintiff, even when providing plaintiff with all favorable inferences, it cannot be said the defendants' acts were so outrageous and extreme "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46(1), comment (d) at 72–73, *cited in Brewer*, 647 F.Supp. at 1567.

It cannot be questioned that the plaintiff's claim concerning harassment by defendant Swenson is meager. Essentially, plaintiff testifies that his claim arises out of an incident at the town hall where Swenson allegedly stared at plaintiff and his wife for "a few minutes." Plaintiff claims that he and his wife were upset by Swenson's stare.

With respect to defendant Cleverly's conduct, the most serious incident alleged involved Cleverly igniting a firecracker near the vicinity of plaintiff's work. As in *Brewer*, the plaintiff describes conduct that is certainly not to be condoned, nevertheless, it is not conduct "that no reasonable person could be expected to endure." *Brewer*, 647 F.Supp. 1567. The court finds the plaintiff has failed, as a matter of law, to state a viable claim in Count II, and the defendants are therefore entitled to judgment.

## III. *Due Process Claims*

Plaintiff alleges that the defendants violated his constitutionally protected right to due process by terminating his employment without affording him notice or an opportunity to be heard.

In order to state a claim that his right to due process has been impermissibly violated, plaintiff must allege that a protected interest has been implicated. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Plaintiff argues that the facts he alleges establish beyond any doubt that the plaintiff had a reasonable expectation of continued em-

ployment with the Town of Bow, and therefore he enjoyed a property interest in his job.

It was established by the Supreme Court in *Board of Regents* that

[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.* at 577, 92 S.Ct. at 2709.

Protected property interests are created and defined "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* In the employment context, the property interest is usually defined by the terms of the contract or agreement between the employee and employer, *id.* at 578, 92 S.Ct. at 2709, although "[e]xplicit contractual provisions may be supplemented by other agreements implied from 'the promisor's words and conduct in light of the surrounding circumstances.'" *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (quoting 3A Corbin on Contracts § 562).

In this case, it is undisputed that plaintiff's application for employment, admittedly read and signed by plaintiff, contained the following provision:

I understand and agree that, if hired, my employment is for no definite period and may, regardless of the date of payment of my wages and salary, be terminated at any time without any prior notice.

Defendant's Memorandum in Support of Motion for Summary Judgment, Ex. 15, p. 2.

Plaintiff contends that notwithstanding this provision, he had a legitimate claim of entitlement to continued employment, since the defendants caused and fostered plaintiff's belief that he was a "permanent" employee and that he would not be fired as long as he performed satisfactory work. Specifically, plaintiff cites the Town's personnel policies, statements made by the selectmen, and correspondence from the se-lectmen to plaintiff as evidence that the parties understood and agreed plaintiff was not merely as "at-will" employee.

■ The sufficiency of plaintiff's claim of entitlement to continued employment is governed by New Hampshire law. *Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). The New Hampshire Supreme Court had determined that "[p]ublic employment is not a constitutionally protected property right of the employee." *Appeal of Parker,* 121 N.H. 986, 988, 437 A.2d 283 (1981) (citing *Colburn v. Personnel Comm'n,* 118 N.H. 60, 64, 382 A.2d 907 (1977)). Sans such a property interest, the procedure the employer chooses to afford a public employee will "accord[ ] with the mandates of the due process clause." *Colburn,* 118 N.H. at 64, 382 A.2d 907.

■ Viewing the record in the light most favorable to the plaintiff, it does not appear that the defendants' act of terminating plaintiff without notice or hearing violated his right to due process. First, it is clear that plaintiff may not base his claim on his unilateral expectations. *Board of Regents,* 408 U.S. at 577, 92 S.Ct. at 2709. Second, assuming *arguendo,* plaintiff attained the status of "permanent" employee, due process requires only that the town comply with whatever procedures it has decided to provide such employees. *Colburn,* 118 N.H. at 64, 382 A.2d 907; *see also Nason v. Personnel Comm'n,* 117 N.H. 140, 370 A.2d 634 (1977) (express terms of personnel policies negated state employee's claim that "permanent" status afforded him right to notice and hearing prior to suspension).

There is no allegation nor does it appear from the record that permanent employees of the Town of Bow were entitled to any specific procedures, e.g., a written warning or an administrative hearing, prior to dismissal. Absent some form of rule or understanding securing such a benefit for plaintiff, he cannot legitimately claim that his due process rights were violated by the defendants' act of terminating him without providing him such a benefit. *Board of*

*Regents*, 408 U.S. at 577, 92 S.Ct. at 2709; *cf. Perry v. Sindermann*, 408 U.S. at 602–03, 92 S.Ct. at 2700 (plaintiff alleged the existence of an unwritten "common law" at University wherein certain employees had the equivalent of tenure). A mere subjective "expectancy" on the part of a discharged employee is not protected by the due process clause. *Perry*, 408 U.S. at 603, 92 S.Ct. at 2700. Therefore, plaintiff's subjective expectation that he would not be summarily dismissed will not support his due process claim. In consideration of the foregoing, the court finds the defendants are entitled to judgment on Count IV.

### IV. *First Amendment*

■ The Supreme Court has determined that even where

> a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of these freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser v. Randall*, 357 U.S. 513, 526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460]. Such interference with constitutional rights is impermissible.

*Perry v. Sindermann*, 408 U.S. at 597, 92 S.Ct. at 2698. Most often, the Supreme Court has applied this principle to denial of the benefit of public employment, regardless of the employee's contractual or other claim to his job. *Id.* (and cases cited).

As with plaintiff's claim of wrongful discharge, the issue is whether plaintiff was fired for an impermissible motive, i.e., failing to provide political support to defendant Swenson. At this point, the parties' dispute is reduced to a swearing contest.

As such, it is not amenable to summary judgment. *Perry*, 408 U.S. at 598, 92 S.Ct. at 2698.

The court does find, however, that plaintiff cannot maintain a claim against defendant Cleverly for the alleged violation of his first amendment rights. The violation allegedly occurred when plaintiff was fired for patronage reasons. Since defendant Cleverly could not have terminated plaintiff and it is undisputed that Cleverly did not participate in the selectmen's decision to terminate plaintiff, plaintiff fails to state a claim against him.

### V. *Qualified Immunity*

■ The plaintiff asserts that as a result of action taken by the defendants under color of state law, he has suffered a violation of his first amendment rights. Such a claim is cognizable under 42 U.S.C. § 1983. *Paratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

The defendants assert that the doctrine of qualified immunity shields them from liability insofar as plaintiff sues them individually. It is well established that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), *cited in Cinelli v. Cutillo*, 896 F.2d 650, 653 (1st Cir.1990). The Supreme Court has defined what constitutes such a clearly established right:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell* [v. *Forsyth*, 472 U.S. 511, 535 n. 12 [105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411] (1985)], but is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Cinelli,* 896 F.2d at 653.

The defendants argue that the rights allegedly violated were not clearly established; consequently, the defendants sued individually are entitled to judgment. The court does not agree. The Supreme Court, in a long line of cases, has established that the politically motivated discharge of a public employee is, except in limited instances, a violation of the employee's first amendment rights. *See Perry v. Sindermann,* 408 U.S. at 597, 92 S.Ct. at 2697 (and cases cited therein). It therefore cannot be determined, as a matter of law, that the rights allegedly violated were not "clearly established" as defined by *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039, or that the defendants may not be held liable on account of their right to qualified immunity.

VI. *Enhanced Compensatory and Punitive Damages*

■ Regarding plaintiff's state law claims, punitive or exemplary damages are unavailable. Plaintiff seeks a remedy not recognized in this state. *Vratsenes v. N.H. Auto, Inc.,* 112 N.H. 71, 73, 289 A.2d 66 (1972). New Hampshire does, however, permit recovery of enhanced compensatory damages in certain instances. *Id.* If the plaintiff prevails on his wrongful discharge claim and proves that the defendants' acts were wanton, malicious, or oppressive, a compensatory damage award may reflect the aggravating circumstances. *Id.; Munson v. Raudonis,* 118 N.H. 474, 478, 387 A.2d 1174 (1978).

■ Punitive and exemplary damages, in actions brought under 42 U.S.C. § 1983 are clearly not available where the named defendant is a municipal body. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981).

■ Although the immunity afforded to a municipality has not been explicitly extended by the Supreme Court to its officers in an official capacity suit, it is logical to assume the immunity does apply in such an instance. Any judgment obtained by a plaintiff in an official-capacity suit would be satisfied by the coffers of the entity represented by the official. In light of this fact, courts have concluded that an official-capacity suit is, in all respects other than name, the same as a suit against the entity. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The court finds that plaintiff's official-capacity claims against the individuals in this case must also be dismissed insofar as plaintiff seeks punitive damages from these defendants. *Accord Hughes v. Blankenship,* 672 F.2d 403, 405 (4th Cir.1982); *Brown v. Town of Allenstown,* 648 F.Supp. 831, 840 (D.N.H.1986).

The court also finds no support, and plaintiff offers none, for plaintiff's contention that he is entitled to enhanced compensatory damages against these defendants regarding his § 1983 claims. This portion of the complaint will be dismissed.

■ Finally, plaintiff may recover punitive damages under § 1983 against the defendants sued in their individual capacity, but only if plaintiff prevails on his § 1983 claim and establishes that the defendants' actions involved reckless or callous indifference to plaintiff's constitutionally protected rights. *See Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *Acosta–Sepulveda v. Hernandez–Purcell,* 889 F.2d 9, 13, (1st Cir.1989).

CONCLUSION

For the reasons set forth in this order, the defendants' Motion for Summary Judgment, (doc. # 18), is granted, with the following exceptions: plaintiff may maintain his claim under Count I to the extent plaintiff alleges his discharge resulted from his failure to support defendant Swenson's political campaign, and he may maintain his claim expressed in Count V, alleging violation of his first amendment rights, in accordance with the terms of this order.