Dismissed in Part, Reversed and Rendered in Part, and
Majority and Dissenting Opinions filed February 4, 2010.

 

 

In The

 

Fourteenth Court of Appeals

___________________

 

NO.
14-08-00017-CV

___________________

 

PHYSIO
GP, INC., PHYSIO, LTD., TANJA SAADAT, and SHAWN SAADAT, Appellants

 

V.

 

NATALIE
NAIFEH, Appellee



 



 

On
Appeal from the 295th District Court

Harris
County, Texas

Trial
Court Cause No. 2006-48316



 



 

D I S S
E N T I N G  O P I N I O N

 

          Does the Sabine Pilot[1] exception to the “employment-at-will doctrine” extend
to an individual defendant who is not the employer of the plaintiff?  In other
words, may an individual, who is not the employer of the plaintiff, be liable
for wrongful discharge of the plaintiff under the Sabine Pilot
doctrine?  The majority answers negatively and supports its position with
cogent arguments and authorities.  However, as the majority acknowledges, this
is an issue on which jurists have struggled and the states are divided.  Unlike
my colleagues, I find myself persuaded by a contrary rationale and opposing
authorities. 

The majority argues the Saadats could not logically
be liable for wrongful termination because they had no authority to fire Naifeh.
  The majority concludes that only the employers, i.e., Physio GP, Inc.
and Physio, Ltd., had the power to terminate Naifeh’s employment.  While the
rationale has a logical allure, it rests on a legal fiction.  In the real
world, no one disputes the fact that Naifeh was fired by Tanja Saadat.  Moreover,
no one disputes the effectiveness of that termination.  Only in the most
abstract sense can it be said that Tanja did not fire Naifeh, and it is little
comfort to her to now learn that Tanja had no intrinsic, individual authority
to terminate her employment.

The majority’s strongest argument, in my mind, is
that the specter of individual liability could discourage corporate supervisors
from terminating employees in legitimate situations.  In the majority of cases,
an employer is shielded by the employment-at-will doctrine.  The doctrine does
not stem from an inherent right of the employer, but from the absence of a
contractual agreement regarding the period of employment.  Thus, employment may
be terminated by the employer or the employee at will, for good cause, bad
cause, or no cause at all.  Montgomery County Hosp. Dist. v. Brown, 965
S.W.2d 501, 502 (Tex. 1998).  By definition, the employment-at-will doctrine
does not require an employer to be reasonable, or even careful, in making its
termination decisions.  Tex. Farm Bureau Mut. Ins. Cos. v. Sears, 84
S.W.3d 604, 609 (Tex. 2002).

Further, I do not doubt that the employment-at-will
doctrine is decidedly beneficial to economic efficiency.  Nor do I dispute the
notion that fear of unjustified litigation can cripple corporate productivity. 
However, the Texas Supreme Court recognized a common law exception to the
employment-at-will doctrine in Sabine Pilot when a termination is based
on an employee’s refusal to do an unlawful act.  The wisdom of that decision
and its public policy ramifications are not at issue here.  Having found such
an exception, it is our duty, as in intermediate appellate court, to give it
application where appropriate.

There are good reasons to believe a corporate
employee may be liable in his or her individual capacity for wrongful
termination.  First, the tort is intensely personal.  It is not based on
negligence, but on intentional malice.  In other words, the gravamen of
wrongful termination is not found in some corporate mistake, but in the
uniquely human passion of hatred, spite, meanness, and revenge.  For
example, the uncontroverted evidence in this case shows that Tanja asked Naifeh
to participate in a massive insurance fraud scheme by signing patient records
reflecting treatments and services that had never been administered.  Naifeh
refused, and she was fired.

The Saadats then set out on a campaign to destroy
Naifeh’s credibility and professional reputation.  The Saadats alleged that
Naifeh was fired because she had performed unauthorized treatment on a
patient’s knee.  The allegation was untrue, and the Saadats later admitted at a
Texas Workforce Commission hearing that they had a copy of the prescription,
authorized by the patient’s physician, for treatment of the knee.

The day after Naifeh was fired, the Saadats filed a
police report falsely alleging Naifeh had stolen documents.  The Saadats also
manufactured a fake “Confidentiality Agreement” (with Naifeh’s forged
signature) stating that “all information related to Physio[’s] day-to-day
operation in regards to patient information and billing shall be kept
confidential[,] and I shall not share any of this information with any patient
or any individual.”  Using the fabricated Confidentiality Agreement and false
police report, the Saadats asserted claims against Naifeh for misappropriation
of confidential and proprietary information and conspiracy to misappropriate
confidential and proprietary information.  They also filed a claim under the
Texas Theft Liability Act.

The Saadats also created multiple false disciplinary
records and submitted them to the Texas Workforce Commission in an attempt to
prevent Naifeh from receiving unemployment benefits.  Finally, the Saadats
submitted multiple false disciplinary records to the Texas Physical Therapy
Board in an effort to have Naifeh’s professional license revoked.

The tort committed here is akin to assault, battery,
false imprisonment, and other intentional torts.  The conduct was purposely
directed at Naifeh with the deliberate intention of inflicting an injury upon
her.  This is the very behavior Sabine Pilot was intended to prevent,
and there is no Texas authority restricting liability solely to the corporate
employer.  

            As
the majority notes, other states have considered, with mixed results, whether
the common law tort of wrongful discharge can expose a corporate employee to
personal liability.[2] 
Some view wrongful discharge as any other tort and impose individual liability
on employees for their own tortious conduct.[3] 
Others have reasoned that the tort can only be committed by the person or legal
entity that employed the terminated employee.[4] 
“These courts reason that an individual officer or employee of a corporation
cannot commit the tort of wrongful discharge because an individual officer or
employee has no authority separate from the authority exercised on behalf of
the corporation to discharge an employee of the corporation.”  Jasper v. H.
Nizam, Inc., 764 N.W.2d 751, 775 (Iowa 2009).  Thus, they reason that “the
existence of an employment contract is . . . the most fundamental prerequisite
to a claim of wrongful discharge.”  Bourque v. Town of Bow, 736 F. Supp.
398, 401 (D.N.H. 1990).  Accordingly, these courts hold that “wrongful
discharge is a corporate tort within a corporate setting, not an individual
tort.”  Jasper, 764 N.W.2d at 776.

            In
Texas, however, the common law tort of wrongful discharge is not derived from
principles of contract law; neither does it spring from a contract of
employment.  If the employee’s termination violates some contractual provision,
he can sue for its breach.  It is precisely because an “at-will” employee is
not protected from a “bad cause” termination; because he has no contractual
protections; and because public policy seeks to discourage criminal acts, that Sabine
Pilot created a narrow exception to the employment-at-will doctrine. 
Further, it is the general rule in Texas that a corporation’s employee is
personally liable for tortious acts which he directs or participates in during
his employment.  Walker v. Anderson, 232 S.W.3d 899, 918 (Tex.
App.—Dallas 2007, no pet.).

            A
corporate shareholder or director, for example, who wrongfully terminates an
employee is liable for tortious interference with the corporation’s employment
contracts if the action is willful, intentional, and advances the interest of
the actor rather than the interests of the corporation.  See Holloway v.
Skinner, 898 S.W.2d 793, 795–96 (Tex. 1995).  Here, the evidence and the
reasonable inferences there from would be sufficient to establish that Tanja’s
actions were willful and intentional, that although it was not in Physio’s
interest to terminate Naifeh for refusing to commit a criminal act, Tanja acted
in her own interests in doing so.[5]

In my view, the public policy considerations raised in Sabine
Pilot, i.e., to relieve “at-will” employees from being pressured to commit
criminal acts, would rationally apply to both the employer and its agents.  The
pressure exerted against Naifeh to falsify records was no less intimidating
because it was asserted by a fellow employee.  Tanja had the power to terminate
Naifeh and did so because she would not become a party to a criminal
enterprise.  Her conduct constitutes the very essence of the common law tort
created by Sabine Pilot.

Accordingly, I respectfully dissent. 

                                                                                    

                                                            /s/                    J.
Harvey Hudson

                                                                                    Senior
Justice

 

 

 

Panel consists of Justices Yates
(majority), Sullivan, and Senior Justice Hudson.*

 

                                                                                                                                                                                                                                                









[1] Sabine Pilot Serv., Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex. 1985).





[2] Other jurisdictions take varied approaches to claims
of individual liability for wrongful termination.  At one end of the spectrum,
California, Illinois, and Kansas do not recognize liability for
wrongful-discharge claims against individual non-employers.  See Reno v.
Baird, 957 P.2d 1333, 1334 (Cal. 1998) (holding that supervisors may not be
sued individually under California’s Fair Employment and Housing Act, and
stating that this holding “also applies to common law actions for wrongful
discharge”); Buckner v. Atl. Plant Maint., Inc., 694 N.E.2d 565, 569–70
(Ill. 1998) (no personal liability for retaliatory discharge of subordinate for
filing a workers’ compensation claim); Rebarchek v. Farmers Coop. Elevator,
35 P.3d 892, 903–04 (Kan. 2001) (same).  At the opposite end of the spectrum,
Iowa, New Jersey, Pennsylvania, and West Virginia recognize the personal
liability of individual non-employers for wrongful termination even when the
individual acted within the course and scope of his or her employment in firing
another employee.  See, e.g., Jasper v. H. Nizam, Inc., 764
N.W.2d 751, 777 (Iowa 2009) (holding that liability for the tort of wrongful
discharge based on refusal to commit an unlawful act can extend to the
corporate officers who authorized or directed the discharge); Ballinger v.
Del. River Port Auth., 800 A.2d 97, 110 (N.J. 2002) (“[A]n individual who
personally participates in the tort of wrongful discharge may be held
individually liable.”); Kamensky v. Roemer Indus., Inc., 1 Pa. D. &
C.4th 497, 499–500 (1988) (president of employer corporation is subject to
personal liability for terminating a reinstated worker’s employment for failure
to withdraw an unemployment compensation claim); Harless v. First Nat’l Bank
in Fairmont, 289 S.E.2d 692, 698 (W. Va. 1982) (“The discharge serves to
fix responsibility on the employer but this does not mean that another employee
who has been the principal protagonist in obtaining the employee’s discharge
would not also be liable.”).  Other jurisdictions consider whether the “principal
protagonist” acted within the course and scope of his own employment when
wrongfully discharging another employee.  For example, the Mississippi Supreme
Court has held that an individual is not liable for his actions in wrongfully
discharging an employee if the individual acted within the course and scope of
his employment, but it has not addressed the question of whether an individual
should be held liable for wrongful termination if he acted outside his
employment duties or contrary to the employer’s interests.  See DeCarlo v.
Bonus Stores, Inc., 989 So. 2d 351, 358–59 (Miss. 2008) (en banc); see
also Bourgeous v. Horizon Healthcare Corp., 872 P.2d 852, 855–56 (N.M.
1994) (leaving open “the question of whether a retaliatory discharge claim lies
against a supervisor, agent, or coemployee if the firing was an intentional act
done solely for the supervisor, agent or coemployee’s own interest and
therefore outside the scope of employment”).





[3] See DeCarlo v. Bonus Stores, Inc., 512 F.3d 173, 176–77 (5th Cir. 2007) (collecting
cases); Higgins v. Assmann Elecs., Inc., 173 P.3d 453, 458 (Ariz. Ct.
App. 2007); Ballinger, 800 A.2d at 110–11; Harless, 289 S.E.2d at
698–99.





[4] See Hooper v. North Carolina, 379 F. Supp. 2d 804, 814–15 (M.D.N.C. 2005) (North
Carolina law); Miklosy v. Regents of the Univ. of Cal., 188 P.3d 629,
644–45 (Cal. 2008); Reno, 957 P.2d at 1347; Buckner, 694 N.E.2d
at 569–70; Rebarchek, 35 P.3d at 904.





[5] Although no question of whether Tanja’s conduct was
itself criminal is at issue in this civil case, the difference between Tanja’s
interests and Physio’s interests is easily seen when one considers separately
the risks and benefits to each arising from Tanja’s conduct in (a) altering the
documents, and in (b) asking Naifeh to sign the altered documents and in
terminating her for refusing to do so.  It was conceivably in Physio’s
financial interests to inflate its bills, and thus, one could make a colorable
argument that by altering records used to support its billing practices, Tanja
was acting in Physio’s best interests.  But because a person who makes false
statements in connection with the delivery of or payment for health care
services can face imprisonment for up to five years, the person who makes such a statement has a
personal stake, distinct from that of a corporate employer, in avoiding
detection.  A reasonable factfinder therefore could conclude that in asking
Naifeh to sign the patient records, Tanja was acting in her own interest to
conceal the fact that the documents had been altered, so that if it were
discovered that insurers were billed by Physio for services that were not
performed, it would appear that Naifeh and not Tanja was responsible.





* Senior
Justice J. Harvey Hudson, sitting by assignment.